¶ 17.
Dooley, J.,
concurring. I concur in the decision of the majority. Under the statute, a child is in need of care or supervision (CHINS) if the child “is without proper parental care or subsistence, education, medical, or other care necessary for his or her well-being.” 33 V.S.A. § 5102(3)(B). This is a very broad definition. Many more children meet that definition than the number who have been declared CHINS and are in the custody of the Department for Children and Families (DCF). In fact, I think it is very likely that the number of children who fit within that standard is a multiple of those committed. That is particularly true in low-income families where the best parenting in the world cannot overcome the lack of money for food, shelter, and clothing.
¶ 18. A result of the broad standard is to give DCF tremendous discretion in determining when and how to intervene to protect a child. The most serious intervention is to take custody of a child, a step that requires court approval. There are many possible less-serious interventions, including the extension of services particularly to a willing parent.
¶ 19. The available choices have become increasingly more restricted because of the vast increase in the need for child protection where one or more parents are engaged in drug abuse. Caseloads have risen dramatically in the last couple of years, and DCF staffing has not kept apace. The competition for DCF resources is more fierce than at any time in the past.
¶ 20. This case does not fit the current paradigm for DCF intervention to take custody of a child. This is mother’s first child. The social worker for DCF described the situation prompting the CHINS petition as follows:
*391 DCF received a report from Southwestern Vermont Medical Center (SVMC) staff expressing concern regarding [mother’s] and [father’s] ability to care for [M.O.] due to their cognitive disabilities. It was reported that both parents are cognitively impaired and receive disability for learning impairments. [Mother] was reported to read at a 2nd or 3rd grade level. [Mother] reportedly worked with a nurse from the Family Partnership . . . for 14 weeks prior to [M.O.’s] birth to prepare her for labor and basic newborn care. Since [M.O.’s] birth [mother] has been very anxious if someone isn’t in the room with her and at times does not know what to do for [M.O.]. It was reported that if something happens that [mother] hasn’t already done several times, she needs prompting on what to do and SVMC staff has been providing her with extra support.
¶21. The affidavit is dated three days after M.O. was born and apparently when M.O. and mother were still in the hospital. It reports instances where mother said she could not care for M.O. and herself. It also reports that mother became consumed and stressed over DCF involvement and stated she would kill herself if DCF took M.O. away from her.
¶ 22. As far as I know, no judge, either on this Court or the trial courts, is a professional in child protection. I think we all recognize that DCF workers are highly committed, dedicated, and expert professionals required to make difficult decisions on how to proceed best to protect children and support families. Nevertheless, as child protection cases become a larger and larger share of judicial caseloads, judges are thrust into the role of making judgments as to the validity of the state’s child-protection actions, as well as acting to protect children and the rights of parents. That somewhat uneasy role prompts this concurrence.
¶ 23. I think DCF and the Legislature need to take a hard look at cases like this one to determine whether there is a way to protect a child in circumstances like this that involve an alternative to DCF custody, particularly DCF custody that is requested three days after the child’s birth. In saying this, I am not suggesting that DCF ever abandon its mission to protect children against neglect and abuse. Nor am I suggesting that DCF ignore the needs of the child in this case or that protection of this child will not be intensive and expensive.
*392 ¶ 24. The protection and nurturing of this child will consume extensive resources whether DCF takes custody or not. But taking custody imposes costs on all parts of the system and causes delay and uncertainty while all procedures are exhausted, including an appeal to this Court. It is likely to make reunification difficult. There is a substantial chance that mother, who is relatively young, will again become pregnant, and this scenario, if left in its current state, is likely to be played out again. Significantly, mother seems to seek and welcome assistance and services within her capacity to do so.
¶ 25. Beyond this individual case, if we are going to develop complete, timely, and successful responses to the urgent child-protection cases we are seeing as a result of opiate addiction, it is critical to develop less costly interventions for less urgent cases with a lower risk potential. I realize that grading child protection cases is an uncertain endeavor, but I think it is very important to Vermont children and families that we try.